IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PATRICIA WHELAN, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 11-1500 Electronic Filing |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) ) | |
| Defendant. | ) | |

## OPINION

### I. INTRODUCTION

Plaintiff Patricia Whelan ("Whelan") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, the motion for summary judgment filed by Whelan (*ECF No. 10*) will be denied, the motion for summary judgment filed by the Commissioner (*ECF No. 12*) will be granted, and the decision of the Commissioner will be affirmed.

### II. PROCEDURAL HISTORY

Whelan protectively applied for DIB and SSI benefits on October 24, 2008, alleging that she had become "disabled" on September 1, 2008. R. 92, 101, 120. Pennsylvania's Bureau of

Disability Determination denied the applications on February 25, 2009. R. 52, 57. Whelan responded on March 17, 2009, by filing a timely request for an administrative hearing. R. 62-65. On July 9, 2010, a hearing was held before Administrative Law Judge ("ALJ") James Bukes. R. 27. Whelan, who was represented by counsel, appeared and testified at the hearing. R. 31-42. Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, also testified at the hearing. R. 42-48. In a decision dated September 14, 2010, the ALJ determined that Whelan was not "disabled" within the meaning of the Act. R. 8-21.

On November 2, 2010, Whelan sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. 6-7. The Appeals Council denied the request for review on September 19, 2011, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. 1. Whelan commenced this action on November 24, 2011, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 3. Whelan and the Commissioner filed motions for summary judgment on June 18, 2012, and July 18, 2012, respectively. ECF Nos. 10 & 12. Those motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

2

conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV. THE ALJ'S DECISION

In his decision, the ALJ determined that Whelan had not engaged in substantial gainful activity subsequent to her alleged onset date. R. 13. Whelan was found to be suffering from depression with anxiety, degenerative disc disease of the cervical spine, gastroesophageal reflux disease ("GERD"), irritable bowel syndrome ("IBS"), recurrent bouts of cystitis, residuals of colon cancer, and carpal tunnel syndrome. R. 13. Her depression, degenerative disc disease, GERD, IBS and cystitis were deemed to be "severe" under the Commissioner's regulations. R. 13; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Whelan's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13-14.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Whelan's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a); however, she requires ready use of the bathroom; simple tasks with no crowds or groups of people; a sit/stand option; and must avoid stooping, kneeling, crouching, and crawling.

R. 15. Whelan had "past relevant work"[2] experience as a bagger, stock person and cashier. R. 42. Edelmann classified those positions as "unskilled"[3] jobs at the "medium"[4] and "light"[5] levels

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).
[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[3] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

of exertion. R. 42. Since Whelan was found to be capable of performing only "sedentary"[6] work, it was determined that she could not return to her past relevant work. R. 19.

Whelan was born on January 3, 1962, making her forty-six years old on her alleged onset date and forty-eight years old on the date of the ALJ's decision. R. 31. She was classified as a "younger person" under the Commissioner's regulations.[7] 20 C.F.R. §§ 404.1563(c), 416.963(c). She had a "limited education"[8] and an ability to communicate in English. R. 31-32, 147, 154; 20 C.F.R. §§ 404.1564(b)(3), (5), 416.964(b)(3), (5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Whelan could work as a hand packer, a sorter, or an assembler. R. 20. Edelmann's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[9] R. 45.

## V. THE EVIDENTIARY RECORD

Whelan underwent a colonoscopy when she was twenty-three years old. R. 199. The test revealed that she was suffering from diverticulosis. R. 199. Whelan sought treatment at the

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).
[7] The regulations recognize that "younger persons" between the ages of forty-five and forty-nine are more limited in their ability to adjust to other work than are persons who have not yet attained the age of forty-five. 20 C.F.R. §§ 404.1563(c), 416.963(c).
[8] Whelan apparently dropped out of school after completing the eleventh grade. R. 31-32, 154. She never obtained a General Educational Development ("GED") certificate. R. 32. In his decision, the ALJ mistakenly stated that Whelan had "at least a high school education." R. 20.
[9] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

Mercy Health Center on August 2, 2006, complaining of abdominal pain, bloating and rectal bleeding. R. 199. Hard stool was found in Whelan's rectum. R. 200. A colonoscopy performed on August 18, 2006, revealed that Whelan was suffering from colon cancer. R. 169, 229. She underwent a laparoscopic transverse colectomy on September 1, 2006, and remained hospitalized until September 4, 2006. R. 169, 175-177. After the surgery, Whelan decided not to undergo treatment with chemotherapy. R. 169.

During the period of time preceding her alleged onset date, Whelan experienced pain in her neck. R. 170. She started to attend physical therapy sessions on April 15, 2008. R. 248. X-rays taken on June 16, 2008, revealed that Whelan had degenerative disc disease in her cervical spine and a small osteophyte on the humeral head of her right shoulder. R. 170, 279-280, 316-317.

Whelan "continued to experience ongoing bouts of bloating, constipation, intermittent diarrhea and pain in her lower left quadrant." R. 169. On September 19, 2008, Dr. Ted Lee performed a pelvic examination to determine whether Whelan's pain was attributable to a gynecological impairment. R. 381-383. After completing the examination, Dr. Lee presumed that Whelan had an adnexal mass. R. 383. He ordered a pelvic ultrasound to confirm the diagnosis. R. 383. The ultrasound, which was performed on September 29, 2008, detected multiple cysts on Whelan's left ovary. R. 385. Her right ovary was found to be normal. R. 385. In a "medical source statement" completed on December 10, 2008, Dr. Lee reported that Whelan had no physical limitations. R. 379-380. On December 15, 2008, a follow-up ultrasound showed that the size and appearance of Whelan's ovarian cysts had not changed. R. 386.

On January 23, 2009, Dr. Antonio Riccelli performed a consultative physical examination of Whelan in connection with her applications for DIB and SSI benefits. R. 362-372. No lumps

8

were found in Whelan's groin. R. 371. Dr. Riccelli attributed Whelan's symptoms to vaginitis rather than to cystitis. R. 371. He also indicated that Whelan was suffering from IBS rather than from diverticulitis. R. 371. Whelan was advised to see a gynecologist for treatment. R. 371. Based on the findings of his examination, Dr. Riccelli reported that Whelan had no physical limitations. R. 362-363. Dr. Frank S. Bryan, a non-examining medical consultant, opined on February 17, 2009, that Whelan could perform an unrestricted range of "medium" work. R. 237-239.

Dr. Asma M. Syeda, a treating physician, detailed Whelan's alleged physical limitations in a "medical statement" dated March 25, 2009. R. 387-390. Dr. Syeda indicated that Whelan could stand or walk for less than two hours, and sit for less than six hours, during the course of an eight-hour workday. R. 388. Whelan was deemed to be capable of lifting or carrying up to ten pounds on only an occasional basis. R. 388. Further limitations were identified with respect to Whelan's pushing and pulling abilities. R. 389. Dr. Syeda asserted that Whelan was limited to only occasional climbing and balancing, and that she was absolutely precluded from stooping, kneeling, crouching or crawling. R. 389. It was noted that Whelan needed to avoid heights, moving machinery, chemicals, fumes, odors, gases, and environments with poor ventilation. R. 389. Dr. Syeda also suggested that Whelan would frequently need to elevate her legs if she were to work for an entire day. R. 388. The limitations identified by Dr. Syeda were attributed to "moderate" pain. R. 388, 390. Dr. Syeda responded in the affirmative when asked whether Whelan was suffering from "chronic pain syndrome." R. 390.

Dr. Vipin Gupta, a gastroenterologist, examined Whelan on July 21, 2009. R. 465-467. Whelan complained of nausea, gas, bloating, constipation, diarrhea, irregular bowel movements and abdominal pain. R. 465. The examination revealed that Whelan's abdomen was "soft and

9

nondistended with good bowel sounds in all four quadrants." R. 466. Dr. Gupta also observed that Whelan had "good rectal tone and good squeezing pressure with brown stool." R. 466. An abdominal x-ray was performed to evaluate Whelan's stool content. R. 466. The x-ray showed a "moderate amount of feces" in Whelan's "sigmoid colon and rectum." R. 464. No evidence of obstruction, free air, organomegaly, stones, or acute bony change was uncovered. R. 464.

On October 23, 2009, Whelan returned to Dr. Lee's office for a follow-up examination. R. 407-409. Dr. Lee reported that Whelan's ovarian cysts were small, unchanged, and most likely benign. R. 408. Whelan was advised that the "true nature" of her ovarian cysts could only be determined with "surgical resection." R. 408.

Whelan went to the Jefferson Regional Medical Center ("Jefferson") on December 21, 2009, complaining of "epigastric abdominal pain radiating to her back." R. 434. She was examined by Dr. Lori Lee Ann Siemon. R. 434. "[S]ome mild epigastric abdominal tenderness" was found. R. 434. X-rays of Whelan's abdomen and pelvis yielded normal results. R. 435. She was discharged in stable condition and instructed to follow up with her regular physicians. R. 435.

On April 27, 2010, Whelan returned to Jefferson's emergency room after experiencing two days of abdominal pain. R. 432. She reported "pain involving the right flank, radiating down to the right lower quadrant." R. 432. Although x-rays of Whelan's abdomen and pelvis detected a small cyst on her left ovary, "[n]o signs of significant pathology" were present. R. 433. Dr. Kip D. Jenifer determined that Whelan did not need to be admitted for inpatient treatment. R. 433.

## VI. DISCUSSION

Dr. Syeda predicted that Whelan would frequently need to elevate her legs during the course of a typical workday if she were to secure a full-time job. R. 388. Edelmann testified that no jobs existed in the national economy for an individual who frequently needed to keep his or her legs elevated.[10] R. 48. He further stated that the sitting and standing limitations identified by Dr. Syeda would clearly preclude an individual from maintaining a full-time job. R. 45, 388. In these respects, Dr. Syeda's opinion constituted an assertion that Whelan was "disabled." R. 388. Relying on the assessments supplied by Dr. Lee, Dr. Riccelli and Dr. Bryan, the ALJ accorded "very little weight" to Dr. Syeda's opinion. R. 19.

The sole issue raised by Whelan concerns the weight accorded to Dr. Syeda's assessment. ECF No. 11 at 4-7. Whelan argues that the ALJ should have adopted Dr. Syeda's opinion because it was "support[ed] by substantial evidence." *Id.* at 6. The "substantial evidence" standard, however, governs judicial review of the factual findings made by the Commissioner. 42 U.S.C. § 405(g). It does not require the Commissioner to accept every medical opinion premised on substantial evidentiary support. Although "substantial evidence" constitutes "more than a mere scintilla of evidence," it "may be less than a preponderance." *Woody v. Secretary of Health & Human Services*, 859 F.2d 1156, 1159 (3d Cir. 1988). The fact that Dr. Syeda's opinion may have provided the ALJ with enough evidence to award benefits to Whelan does not mean that he was *required* to do so. Factual findings that are "supported by substantial evidence" must be sustained even if a reviewing court "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. The relevant question is not whether "substantial

---

[10] The inquiry required under the Social Security Act does not account for any "reasonable accommodations" mandated by Title I of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12111-12117]. *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 95 (3d Cir. 2007).

evidence" would have supported alternative factual findings, but rather whether the findings actually made by the ALJ were based on substantial evidentiary support. *Jones*, 364 F.3d at 503; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545 (3d Cir. 2003). A reviewing court is "not permitted to weigh the evidence or substitute [its] own conclusions for th[ose] of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

A medical opinion provided by a treating source is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [a claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even when a treating source's opinion is not afforded "controlling weight," it must still be given serious consideration by an administrative law judge. *Gonzalez v. Astrue*, 537 F.Supp.2d 644, 660 (D.Del. 2008). Assessments provided by treating physicians are ordinarily entitled to more weight than contrary assessments supplied by non-examining consultants. *Brownawell v. Astrue*, 554 F.3d 352, 357 (3d Cir. 2008). Nonetheless, a treating physician's assessment of a claimant's work-related abilities and limitations is not binding on the Commissioner. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). Opinions rendered by examining and non-examining consultants "merit significant consideration as well." *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011). Every medical opinion, regardless of its source, must be given some consideration. *Williams v. Sullivan*, 970 F.2d 1178, 1185, n. 5 (3d Cir. 1992). Where a clear conflict in the evidence exists, an administrative law judge "is free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009).

In this case, the ALJ's residual functional capacity assessment was supported by the opinions of a treating gynecologist, a consultative examiner, and a non-examining medical

consultant. R. 236-246, 362-372, 379-380. Dr. Lee and Dr. Riccelli both reported that Whelan had no physical limitations. R. 362-363, 379-380. The only physical limitations found by Dr. Bryan were the lifting and carrying restrictions incorporated within the definition of "medium" work. R. 237-240; 20 C.F.R. §§ 404.1567(c), 416.967(c). Although Dr. Lee's assessment could be understood to mean only that no limitations were specifically attributable to Whelan's ovarian cysts, it is worth noting that his examination of her neck yielded normal results.[11] R. 383. Dr. Riccelli's examination was clearly comprehensive, since it was conducted *solely* for the purpose of evaluating Whelan's ability to perform work-related tasks. R. 371. It was also permissible for the ALJ to treat Dr. Bryan's opinion as evidence contradicting the assessment provided by Dr. Syeda. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). In light of this conflicting evidence, the ALJ had a reasonable basis for rejecting Dr. Syeda's opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985).

Although the ALJ accorded "very little weight" to Dr. Syeda's "conclusions of disability," he clearly considered her assessment in determining Whelan's residual functional capacity. R. 19. The ALJ partially credited Dr. Syeda's findings by restricting Whelan to "sedentary" work, affording her a "sit/stand option," and limiting her to only occasional stooping, kneeling, crouching and crawling. R. 15, 388-389. These limitations extended far beyond those found by Dr. Lee, Dr. Riccelli and Dr. Bryan. R. 236-246, 362-372, 379-380. The incorporation of some limitations described by Dr. Syeda indicates that the ALJ carefully weighed the evidence and grounded his findings in the evidentiary record. *Chandler*, 667 F.3d at

---

[11] Although Dr. Lee performed neck, cardiovascular, abdominal and pelvic examinations, he did not take Whelan's vital signs or examine her breasts. R. 382-383. It is not entirely clear whether Dr. Lee intended to provide a comprehensive assessment of Whelan's work-related abilities, or whether he was simply reporting that no physical limitations could be directly traced to her gynecological impairments. R. 379-380.

361-362.  A careful review of the record also reveals that the ALJ seriously considered Whelan's testimony.  Whelan testified that she needed to remain near a restroom and could not "be around a lot of people at one time."  R. 37-38.  The ALJ addressed those concerns by providing Whelan with "ready use of the bathroom" and precluding jobs involving exposure to "crowds or groups of people."  R. 15.  The ALJ was not required to credit the assertions of Dr. Syeda and Whelan in all respects.  *Chandler*, 667 F.3d at 361-363; *Brown*, 649 F.3d at 196-197.

The ALJ's colloquy with Edelmann accounted for every limitation contained in the subsequent residual functional capacity finding.  R. 15, 42-45.  In response to a question posed by the ALJ, Edelmann stated that an individual who needed to "avoid fine fingering" could not maintain the "sedentary" jobs described in his testimony.  R. 45.  The record indicates that Whelan suffered from carpal tunnel syndrome, which was found to be a "non-severe" impairment.  R. 13.  Whelan testified that while her carpal tunnel syndrome had caused numbness in three fingers on her left hand, she was still able to "do a lot of stuff with [her] right hand."[12]  R. 39.  Her counsel characterized the carpal tunnel syndrome as a "mild" impairment. R. 47.  Dr. Lee, Dr. Riccelli, Dr. Bryan and Dr. Syeda all found Whelan's handling ability to be unlimited.  R. 238, 363, 380, 389.  On the basis of the existing record, the ALJ acted within his discretion in determining that Whelan was not precluded from engaging in "fine fingering." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  The portion of Edelmann's testimony relating to an individual with that limitation did not preclude a finding that Whelan was capable

---

[12] In a letter to Dr. Syeda dated July 16, 2008, Dr. Mark E. Baratz stated that the pain in Whelan's shoulder and neck was "more of an issue than the numbness in her fingers."  R. 286. He was referring to carpal tunnel syndrome in Whelan's *right* arm.  R. 286.  Dr. Baratz specifically observed that Whelan had no symptoms in her *left* arm.  R. 286.  It is not clear whether Whelan suffered from impairments in both arms at different times, or whether the inconsistency between her testimony and Dr. Baratz's letter was the result of confusion.  R. 38-39, 45-47, 286.

14

of performing "sedentary" work. *Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987). Since the colloquy incorporated all limitations deemed by the ALJ to have been credibly established in the record, Edelmann's testimony satisfied the Commissioner's burden of production at the fifth step of the sequential evaluation process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008)(declining to consider "whether a person who lacks bilateral dexterity is presumptively disabled" because the evidentiary record suggested that the claimant retained "occasional hand use").

**VII. CONCLUSION**

The Commissioner's decision denying Whelan's applications for DIB and SSI benefits is "supported by substantial evidence" and will be affirmed. 42 U.S.C. § 405(g). Whelan's motion for summary judgment (*ECF No. 10*) will be denied, and the Commissioner's motion for summary judgment (*ECF No. 12*) will be granted. An appropriate order follows.

Date: January 16, 2013

                 s/ David Stewart Cercone
                 David Stewart Cercone
                 United States District Judge

cc:  Cynthia C. Berger, Esquire
   Kelie C. Schneider, Esquire
   Michael Colville, AUSA

   (*Via CM/ECF Electronic Mail*)